UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

DOUGLAS L. MYSER,

          Plaintiff,

      v.

SPOKANE COUNTY, et al.,

          Defendants.

No. CV-06-24-FVS

ORDER GRANTING AND
DENYING SUMMARY JUDGMENT

**THIS MATTER** comes before the Court without oral argument for resolution of three motions. The plaintiff is represented by John R. Muenster. The defendants are represented by Robert B. Binger and Peter J. Johnson.

**BACKGROUND**

On January 26, 2003 (Super Bowl Sunday), Douglas L. Myser had a number of drinks at McQ's Prime Time Grill, which is a sports bar. He questioned the accuracy of his bill. At least one employee thought he was obnoxious and belligerent. She called a 9-1-1 operator and asked for help. Spokane County Sheriff's Deputy Jeffrey Shover was the first to arrive at the bar. He was joined by Sergeant Pete Bunch, Deputy Mark Gregory, and Deputy Brett Peterson. The deputies allege Mr. Myser was intoxicated and uncooperative, and, when they attempted to escort him from the bar, he assumed a martial pose indicating he intended to fight them. Mr. Myser disputes the deputies' account of

ORDER GRANTING AND DENYING SUMMARY JUDGMENT - 1

what occurred.  Although he acknowledges questioning the accuracy of his bill, he denies he was intoxicated, obnoxious, or belligerent.  He says the deputies pressured him to sign his bill, which he says he did.  Despite the fact he signed his bill, says Mr. Myser, the deputies slammed him to the floor with such force his glasses went flying and his head struck the floor.  Deputy Peterson placed his knee on Mr. Myser's neck.  The deputies told him to put his arms behind his back.  Mr. Myser says he would have complied; but he could not do so because his arms were pinned underneath his body.  The deputies were unable to pry them free.  Consequently, they administered several "knee strikes" to his torso.  He released his arms.  The deputies handcuffed him, arrested him on a charge of disorderly conduct, and placed him the back of Deputy Shover's police car.  Deputy Shover drove him to the Spokane County Jail.  Mr. Myser alleges that, on the way, he complained to Deputy Shover that the deputies were violating his civil rights.  According to Mr. Myser, Deputy Shover asked, "Who are you going to use for witnesses?"  Mr. Myser says he told Deputy Shover he intended to hire an attorney and file a lawsuit.  Shortly thereafter, says Mr. Myser, Deputy Shover took him to a dark area, removed him from his car, and beat him unconscious with the help of another deputy.  Mr. Myser says he regained consciousness at the Spokane County Jail.  He posted bail and went to a local hospital.  Three ribs were either cracked or broken.  As it turned out, Mr. Myser resolved the disorderly conduct charge without a trial.  On November 10, 2003, Mr. Myser, his attorney, and a deputy prosecuting attorney

ORDER GRANTING AND DENYING SUMMARY JUDGMENT - 2

presented a "Motion and Stipulated Order of Continuance" to a state judge.  In essence, the parties asked the judge to stay proceedings for one year based upon certain conditions.  The judge accepted their proposal.  Mr. Myser fulfilled his obligations under the agreement, and the judge dismissed the charge at the end of the one-year period. On January 24, 2006, Mr. Myser filed the instant action.  He alleges the four deputies and Spokane County violated rights secured by the First, Fourth, and Fourteenth Amendments to the Constitution.  He seeks damages under 42 U.S.C. § 1983.  The Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(3).

**PERSONAL JURISDICTION OVER DEPUTY SHOVER**

Mr. Myser filed a "Complaint for Damages" on January 24, 2006. He named Spokane County, Jim Shover, Mark Gregory, Brett Peterson, Pete Bunch, and "John Does 5-7" as defendants.  He did not serve that complaint.  Instead, on March 24, 2006, he filed a "First Amended Complaint for Damages."  The amended complaint names the same defendants and re-alleges all but one of the same claims.  In other words, the only material difference between the original complaint and the amended complaint is that the latter omits a claim which is contained in the former.  Deputy Shover was served with a summons and a copy of the amended complaint on May 26, 2006.

Deputy Shover is subject to personal jurisdiction only if he has been served properly.  *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 538 (9th Cir.1986) ("[a] federal court obtains personal jurisdiction over a defendant if it is able to serve process

ORDER GRANTING AND DENYING SUMMARY JUDGMENT - 3

on him"). Service must be timely in order to be proper. Federal Rule of Civil Procedure 4(m) provides that process must be served within 120 days of the date upon which the complaint is filed. Mr. Myser failed to effect service of process upon Deputy Shover prior to the 120-day deadline.

Mr. Myser's failure to serve Deputy Shover prior to the 120-day deadline was not for want of effort on Mr. Myser's part. Rather, the delay occurred because both Mr. Myser's original complaint and his amended complaint mistakenly identify Deputy Shover as "Jim Shover." In fact, his first name is "Jeffrey." The Spokane County Sheriff's Office refused to serve Deputy "Jim" Shover; notifying Mr. Myser that no one by the name of "Jim" Shover worked for the Sheriff's Office. Mr. Myser asked the defendants to allow him to file a second amended complaint correctly identifying Deputy Shover as Jeffrey Shover. Although the defendants consented, Mr. Myser has never filed a second amended complaint that correctly states Deputy Shover's first name. Nevertheless, process has been served upon Deputy Shover. On May 26, 2006, the Spokane County Sheriff's Office served him with a summons and a copy of the first amended complaint. He moves to dismiss Mr. Myser's claims against him on the ground the Court lacks personal jurisdiction as a result of improper service of process.[1]

---

[1]Deputy Shover was named as a defendant in the original complaint, not the amended complaint. Thus, the 120-day deadline runs from January 24, 2006, not March 24th. *Cf. McGuckin v. United States*, 918 F.2d 811, 813 (9th Cir.1990) (when a plaintiff adds a new defendant in an amended complaint, the plaintiff has

The 120-day deadline set forth in Rule 4(m) is not inflexible. It may be extended upon a showing of "good cause." *Id.* Good cause exists here. Mr. Myser attempted to serve Deputy Shover within 120 days of January 24, 2006. Assuming the Sheriff's Office's initial refusal to serve Deputy Shover was justified, it is likely he knew within the 120-period that he had been named as a defendant. Furthermore, Mr. Myser missed the deadline by just two days. Given the preceding circumstances, the Court will extend the deadline for effecting service of process.[2]

**"DOE" DEFENDANTS**

The defendants move to dismiss all "Doe" defendants. Mr. Myser does not oppose their motion. Nor could he. It is too late for him to substitute named defendants for "Doe" defendants. *Cf. Praxair, Inc.*, 494 F.3d at 471 ("[m]ost parties substituted for 'Doe'

---

120 days from the filing of the amended complaint in which to serve the new defendant).

[2]Deputy Shover has never been served with a complaint in which his first name is set forth accurately. Mr. Myser must file and serve a second amended complaint that rectifies the error. Under Rule 15(c)(1)(C), the amendment will relate back to the date upon which the original complaint was filed. *See G. F. Co. v. Pan Ocean Shipping Co., Ltd.*, 23 F.3d 1498, 1502-04 (9th Cir.1994) (an amended complaint that corrected a misnomer related back to the original complaint). *Accord Goodman v. Praxair, Inc.*, 494 F.3d 458, (4th Cir.2007) (en banc) (when a misnamed defendant "has been given fair notice of a claim within the limitations period and will suffer no improper prejudice in defending it, the liberal amendment policies of the Federal Rules favor relation-back" (emphasis omitted)).

ORDER GRANTING AND DENYING SUMMARY JUDGMENT - 5

defendants would be protected against being added either because they were prejudiced or because they did not have proper notice").

**STATUTE OF LIMITATIONS**

Section 1983 of Title 42 does not include a statute of limitations. *Wilson v. Garcia*, 471 U.S. 261, 275, 105 S.Ct. 1938, 1946, 85 L.Ed.2d 254 (1985). Consequently, the Court borrows the forum state's limitations period for personal injury claims. *Taylor v. Regents of Univ. Of Cal.*, 993 F.2d 710, 711 (9th Cir.1993). Mr. Myser's § 1983 claim is governed by a three-year statute of limitations. RCW 4.16.080(2). The defendants concede he timely filed his original complaint.

"Once a complaint is filed, the statute of limitations is tolled unless and until the district court dismisses the action." *Mann v. American Airlines*, 324 F.3d 1088, 1090 (9th Cir.2003) (citation omitted). Mr. Myser's January 24th filing tolled the statute of limitations with respect to all of the claims that were contained in his original complaint. Did the filing of an amended complaint restart the statute of limitations? The answer is, "Yes and no." Mr. Myser did not include one of his original claims in the amended complaint. As to that claim, the statute of limitations arguably restarted; but if did, it restarted only as to that claim. The claims Mr. Myser included in the amended complaint are the same, in all material respects, as their counterparts in the original complaint. The filing of the original complaint tolled the statute of limitations with respect to those claims. As far as those claims are concerned,

ORDER GRANTING AND DENYING SUMMARY JUDGMENT - 6

nothing has occurred since January 24, 2006, to restart the running of the statute of limitations.  It was tolled when Mr. Myser filed his amended complaint on March 24th and it remains tolled today.[3]

**JUDICIAL ESTOPPEL**

Mr. Myser was issued a citation charging him with the crime of disorderly conduct.  He obtained an attorney.  Eventually, his attorney negotiated an agreement with a deputy prosecuting attorney.  The terms of the agreement are embodied in a document that is entitled "Motion and Stipulated Order of Continuance" (hereinafter "Stipulated Order").  The parties asked a judge to continue the matter for one year and order Mr. Myser to fulfill certain obligations.  The parties recognized he might not fulfill all of the obligations imposed by the judge.  They agreed, in the event of a breach, a judge would decide his guilt or innocence "on the record":

> The Defendant understands that [the phrase "on the record"] means that if a judge finds the Defendant is in breach of this agreement, the judge will read and review the police reports only and will review any other materials submitted by the prosecuting authority and, based solely upon that evidence, the judge will decide the Defendant's guilt pertaining to the crime(s) charged herein.

(Stipulated Order at 1.)

The above-quoted provision is located at the bottom of page one of the Stipulated Order.  The section that is entitled "ORDER" begins at the top of page two.  It provides the "cause shall be continued to

---

[3]Since the amended complaint does not add new claims, Rule 15(c) is inapplicable.

ORDER GRANTING AND DENYING SUMMARY JUDGMENT - 7

11-10-04, [and] the case will be dismissed on that date provided the conditions as indicated below are met[.]"  There were four:  (1) "Defendant shall . . . commit no similar criminal law violations."  (2) **Defendant stipulates to the accuracy and admissibility of the police report(s).**  (3)  "Defendant agrees to pay the costs of $100.00."  (4) "No contact with McQ's[.]"  (*Id.* at 2.)  (Emphasis added.)

Mr. Myser signed the Stipulated Order.  He was present when his attorney and the deputy prosecuting attorney submitted it to a judge.  As it turned out, Mr. Myser fulfilled his obligations under the Stipulated Order.  Thus, on or after November 10, 2004, a judge dismissed the disorderly conduct charge.

Mr. Myser filed the instant action on January 24, 2006.  From the outset, it has been clear he disputes the accuracy of the deputies' reports.  The defendants claim he is reneging on the representation he made to the judge in state court; namely, that the deputies' reports are accurate.  Citing the doctrine of judicial estoppel, they argue Mr. Myser may not deny the accuracy of the deputies' reports in this case.

A federal court must exercise discretion when deciding whether the doctrine of judicial estoppel is applicable.  *New Hampshire v. Maine*, 532 U.S. 742, 750, 121 S.Ct. 1808,1815, 149 L.Ed.2d 968 (2001) (citation omitted).  The following non-exclusive factors are relevant: whether a party's later position is clearly inconsistent with its original position; whether the party has successfully persuaded the

ORDER GRANTING AND DENYING SUMMARY JUDGMENT - 8

court of the earlier position; and whether allowing the inconsistent position would allow the party to derive an unfair advantage or impose an unfair detriment on the opposing party. *United States v. Ibrahim*, 522 F.3d 1003, 1009 (9th Cir.2008) (internal punctuation and citation omitted).

Mr. Myser denies he made the representation attributed to him by the defendants. According to him, the concession he made to the deputy prosecuting attorney was much more limited. In his opinion, he agreed only that he would not contest the accuracy of the deputies' reports in the event they were presented to a state judge. This concession, says Mr. Myser, is a far cry from stipulating for all time that the deputies' reports are accurate.

Mr. Myser's interpretation of the Stipulated Order is inconsistent with its plain language. The order states in pertinent part, "Defendant stipulates to the **accuracy** and admissibility of the police report(s)." (Stipulated Order at 2.) (Emphasis added.) This is not a provision that is hidden in the depths of a multi-page agreement. To the contrary, it is located on page two of a two-page document; the same page upon which Mr. Myser's signature is located. He could not have missed it. Nor could he have misunderstood it. It is unambiguous.

The fact Mr. Myser stipulated in state court to the accuracy of the deputies' reports does not mean he his bound by the stipulation in this case. One of the factors the Court must consider in making that determination is whether the position he is taking in this case is

clearly inconsistent with the stipulation.  *Ibrahim*, 522 F.3d at 1009.
In important respects, it is.  The deputies' reports state Mr. Myser
engaged in obnoxious and belligerent behavior prior to their arrival.
They say he was intoxicated, uncooperative, and insulting when they
spoke to him.  They say he became combative when they attempted to
escort him out of the bar.  At that point, the deputies forced him to
the floor of the bar.  They say he refused to produce his wrists for
handcuffing, and they were unable to pry his arms from underneath his
body.  It was only at that point, according to their reports, that
they administered the knee strikes; and then only so they could compel
him to produce his wrists for handcuffing.

Mr. Myser disputes all but one of the statements listed above.
He denies engaging in obnoxious or belligerent behavior before the
deputies arrived.  He denies being highly intoxicated.  He denies
being uncooperative when asked for identification.  He denies
insulting the deputies.  He denies becoming combative when they
attempted to escort him outside.  While he acknowledges being forced
to the floor ("slammed" is the word he uses), he denies intentionally
resisting the deputies' efforts to handcuff him.  He alleges his arms
were pinned beneath his body, which prevented him from producing his
wrists for handcuffing.  On each of the preceding points, Mr. Myser's
current allegations are clearly inconsistent with explicit statements
in the deputies' reports; reports whose accuracy he accepted in state
court.

Another factor the Court must consider is whether Mr. Myser

ORDER GRANTING AND DENYING SUMMARY JUDGMENT - 10

successfully persuaded the state judge to accept his stipulation regarding the accuracy of the police reports. *Ibrahim*, 522 F.3d at 1009. The stipulation was one of the conditions upon which the continuance was based. As noted above, the order states the "cause shall be continued to 11-10-04, [and] the case will be dismissed on that date provided the conditions as indicated below are met: . . . Defendant stipulates to the accuracy and admissibility of the police report(s)." The fact the stipulation was an integral part of the parties' proposal to the judge, and the fact she accepted their proposal, means Mr. Myser successfully persuaded her to accept his representation regarding the reports' accuracy.

Finally, Mr. Myser would obtain an unfair advantage if the Court allows him to deny the portions of the deputies' reports that are clearly inconsistent with the position he is now taking. He was charged in state court with the crime of disorderly conduct. While a conviction for that crime would not preclude him from bringing a § 1983 claim based upon an allegation of excessive force, *Smith v. City of Hemet*, 394 F.3d 689, 695-99 (9th Cir.) (*en banc*), *cert. denied*, 545 U.S. 1128, 125 S.Ct. 2938, 162 L.Ed.2d 866 (2005), the absence of a disorderly conduct conviction is beneficial to him in this action. He now alleges he was a reasonably well-behaved bar patron who had done nothing to justify the deputies' aggressive measures. The existence of a disorderly conduct conviction would undermine Mr. Myser's allegations. Whether a jury would have convicted Mr. Myser is impossible to know; but he avoided the risk of a conviction by

ORDER GRANTING AND DENYING SUMMARY JUDGMENT - 11

entering into an agreement with the prosecuting attorney.  One of the
terms of the agreement was his stipulation that the police reports are
accurate.  This was a significant concession on Mr. Myser's part; but
a concession that was necessary in order for him to obtain a valuable
benefit.  The deputy prosecuting attorney who represented the State of
Washington in the criminal case says he would not have signed the
order absent Mr. Myser's stipulation to the accuracy of the deputies'
reports.  Allowing Mr. Myser to retain the benefit of the order
without holding him to the stipulation would confer an unfair
advantage upon him and impose an unfair detriment upon the defendants.
*Ibrahim*, 522 F.3d at 1009.

In conclusion, Mr. Myser is bound by those explicit statements in
the deputies' reports that are clearly inconsistent with allegations
he is now making.  However, holding Mr. Myser to the stipulation does
not preclude him from seeking relief under § 1983.  Some of his
allegations are not clearly inconsistent.  For example, Mr. Myser
alleges the deputies repeatedly slammed his head into the floor before
handcuffing him.  This allegation is not clearly inconsistent with
explicit statements in the deputies' reports.  To the contrary, a
rational jury could find that the deputies omitted this information
from their reports.  So, too, Mr. Myser's allegations regarding the
trip from the bar to the jail.  Deputy Shover is the one who drove Mr.
Myser.  His report says little about what occurred during the trip.
Mr. Myser alleges Deputy Shover stopped on the way to the jail, took
him out of the back of the car, and beat him unconscious with help

ORDER GRANTING AND DENYING SUMMARY JUDGMENT - 12

from another deputy.  This allegation is not clearly inconsistent with explicit statements in Deputy Shover's report.  Mr. Myser is not estopped from making this allegation.

**QUALIFIED IMMUNITY**

Deputies Shover, Peterson, and Gregory seek qualified immunity. In order to decide whether they are eligible, the Court must conduct at least one inquiry, and perhaps two.  The first is whether they violated a constitutional right.  *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001).  If, viewing the record in the light most favorable to Mr. Myser, a reasonable jury could not find a constitutional violation, the deputies are entitled to qualified immunity.  *Id.*  No further inquiry is necessary.  *Id.*  By contrast, if a reasonable jury could find a constitutional violation, the Court must conduct a second inquiry.  *Id.*  It is whether, on January 26, 2003, the right was clearly established.  *See id.*

A. Retaliation

Mr. Myser alleges two instances of retaliation in violation of the First Amendment.  First, he claims the deputies arrested him because he insulted them in the bar.  Second, he claims Deputy Shover and another unidentified deputy beat him because he threatened to file a lawsuit.

*1. Elements of a First Amendment violation*

Mr. Myser has abandoned his claim that the deputies lacked probable cause to arrest him.  His decision is unsurprising.  "An arrest is supported by probable cause if, under the totality of

ORDER GRANTING AND DENYING SUMMARY JUDGMENT - 13

circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the defendant] had committed a crime." *Beier v. City of Lewiston*, 354 F.3d 1058, 1065 (9th Cir.2004) (alteration in original) (quoting *Grant v. City of Long Beach*, 315 F.3d 1081, 1085 (9th Cir.2002)). Given what the deputies learned from employees of McQ's, and given what the deputies observed, they had probable cause to arrest Mr. Myser for disorderly conduct.[4] The existence of probable cause is not a bar to a First Amendment retaliation claim. *Skoog v. County of Clackamas*, 469 F.3d 1221, 1234-5 (9th Cir.2006). Nevertheless, in order to recover, Mr. Myser must establish two elements. To begin with, he must prove the actions of which he complains "would chill or silence a person of ordinary firmness from future First Amendment activities." *Id.* at 1232 (internal punctuation and citation omitted). In addition, he must prove the deputies intended to chill protected expression and this was a but-for cause of their actions. *Id.* (citations omitted).

   *2. Arrest*

   The deputies do no deny that arresting a person for insulting a law enforcement officer would discourage a person of ordinary firmness from insulting an officer in the future. Thus, Mr. Myser may be able to prove the first element of a retaliation claim, *viz.*, the existence of a chilling effect. *Id.* Nor have the deputies attempted to

---

   [4]"The requirement that a misdemeanor must have occurred in the officer's presence to justify a warrantless arrest is not grounded in the Fourth Amendment." *Barry v. Fowler*, 902 F.2d 770, 772 (9th Cir.1990).

demonstrate they would have arrested Mr. Myser even if he had not insulted them.  Consequently, Mr. Myser may be able to prove the second element of a retaliation claim, *viz.*, causation.  *See Hartman v. Moore*, 547 U.S. 250, 260, 126 S.Ct. 1695, 1704, 164 L.Ed.2d 441 (2006) ("upon a prima facie showing of retaliatory harm, the burden shifts to the defendant official to demonstrate that even without the impetus to retaliate he would have taken the action complained of").  Since Mr. Myser may be able to prove both elements of a retaliation claim, genuine issues of material fact exist with respect to whether the arrest violated the First Amendment.  Which means the Court must proceed to the second *Saucier* inquiry.  In other words, the Court must determine whether, on January 26, 2003, an individual had a clearly established right to be free from a Fourth Amendment seizure which was supported by probable cause, but which was motivated by retaliatory animus.  *Skoog*, 469 F.3d at 1235.  The Ninth Circuit resolved the issue in *Skoog*.  The right was not clearly established on January 26, 2003.  *See id.*  It follows the deputies are entitled to qualified immunity with respect to Mr. Myser's allegation they arrested him in violation of the First Amendment.

   *3. Alleged beating*

   The trip from the bar to the jail took 13 minutes.  Mr. Myser alleges Deputy Shover stopped the patrol car en route and beat him.  A reasonable jury could find Deputy Shover did not have time to commit the acts alleged by Mr. Myser, or, even if he did, Mr. Myser's memory of the trip was distorted by severe intoxication.  However, a

ORDER GRANTING AND DENYING SUMMARY JUDGMENT - 15

reasonable jury would not be compelled to make such findings.  Genuine issues of material fact exist with respect to whether the beating took place.  Furthermore, on January 26, 2003, a reasonable law enforcement officer would have known he would violate the First Amendment by beating an intoxicated arrestee who threatened to sue him.  As a result, Deputy Shover is not entitled to qualified immunity regarding this alleged instance of retaliation.

B. Excessive Force

Mr. Myser alleges the deputies employed excessive force in violation of the Fourth Amendment.  He claims the deputies acted unreasonably by slamming him to the floor, administering knee strikes, repeatedly striking his head against the floor before handcuffing him, and, finally, beating him during the trip to the jail.

1. Graham v. Connor

"*[A]ll* claims that law enforcement officers have used excessive force -- deadly or not -- in the course of an arrest, investigatory stop, or other 'seizure' . . . should be analyzed under the Fourth Amendment and its 'reasonableness' standard[.]"  *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989) (emphasis in original).  Whether a law enforcement officer's use of force was "'objectively reasonable'" depends upon the totality of the facts and circumstances confronting him.  *Smith*, 394 F.3d at 701 (quoting *Graham*, 490 U.S. at 397, 109 S.Ct. at 1872).  When assessing the objective reasonableness of a particular action, a court should consider at least three factors:  "[1] the severity of the crime at

ORDER GRANTING AND DENYING SUMMARY JUDGMENT - 16

issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Davis v. City of Las Vegas*, 478 F.3d 1048, 1054 (9th Cir.2007) (quoting *Graham*, 490 U.S. at 396, 109 S.Ct. at 1872).

    *2. Forcing Mr. Myser to the floor and administering knee strikes*

    Deputy Shover asked Mr. Myser to leave the bar.  "Myser stated he was not doing anything wrong and that he was not going to leave."  Mr. Myser then assumed an offensive stance, as though he was preparing to fight, and said, "F___ you, ass____."  The deputies did not wait for Mr. Myser to throw a punch.  They forced him face-down on the floor and attempted to handcuff him.  He resisted by holding his arms under his chest.  They attempted to pry his arms from underneath him, but were unable to do so.  In an effort to dislodge his arms, the deputies administered knee strikes into Mr. Myser's torso.  These were significant blows; they may have cracked or broken three ribs.  In any event, the knee strikes had the intended effect.  Mr. Myser released his arms and submitted his wrists for handcuffing.[5]

    The first qualified-immunity inquiry is whether the take-down and knee strikes violated the Fourth Amendment.  *Saucier*, 533 U.S. at 201, 121 S.Ct. at 2156.  Mr. Myser must identify evidence from which a jury could find the deputies' actions were objectively unreasonable in

---

    [5]The allegations summarized above are drawn from the deputies' reports.  Given Mr. Myser's stipulation in state court, he is estopped from denying that he spoke and behaved in the manner described by the deputies.

ORDER GRANTING AND DENYING SUMMARY JUDGMENT - 17

light of the three *Graham* factors.  It is appropriate to begin with
the conduct that led to his arrest.  He characterizes his conflict
with the server/manager as a bona fide dispute concerning the amount
of his bill.  In situations such as this, says Mr. Myser, law
enforcement officers are not entitled to use force against a patron.
Indeed, he submits an officer would never be justified in using force
to respond to disorderly conduct in a bar during the Super Bowl.  He
is mistaken.  The deputies had reason to believe Mr. Myser pushed a
server in a belligerent manner before they arrived.  His behavior in
their presence was consistent with what they heard from her.  They
observed a person who was intoxicated and antagonistic.  An objective
law enforcement officer in their position reasonably could have
concluded Mr. Myser would not peacefully leave the bar.  When Mr.
Myser assumed an aggressive stance, the deputies had to make a split-
second decision about how to respond.  Their decision is entitled to
deference.  *See Graham*, 490 U.S. at 396-97, 109 S.Ct. at 1872 ("The
calculus of reasonableness must embody allowance for the fact that
police officers are often forced to make split-second judgments -- in
circumstances that are tense, uncertain, and rapidly evolving -- about
the amount of force that is necessary in a particular situation.").
The deputies were not required to wait until Mr. Myser threw a punch.
They were entitled to take aggressive steps to restrain him before he
assaulted them.  No doubt it seemed to Mr. Myser that he was slammed
to the floor; but a take-down must be accomplished quickly and
decisively in order to succeed.  Once on the floor, Mr. Myser could

ORDER GRANTING AND DENYING SUMMARY JUDGMENT - 18

have submitted to the deputies' authority and produced his wrists for handcuffing.  He did not do so.  He resisted.  The deputies attempted to pry his arms from underneath him.  He was too strong and too determined.  It was then, and only then, that they administered knee strikes.  Although a knee strike does not constitute deadly force, it is intended to inflict pain and is capable of injuring an arrestee.[6]  Thus, when feasible, a law enforcement officer should issue a warning before administering a knee strike.  *See Deorle v. Rutherford*, 272 F.3d 1272, 1282-83 (9th Cir.2001), *cert. denied*, 536 U.S. 958, 122 S.Ct. 2660, 153 L.Ed.2d 835 (2002).  The fact the deputies did not do so is relevant, but not dispositive.  They were confronted with an intoxicated, combative individual who was resisting arrest.  In view of Mr. Myser's behavior up to that point, an objective officer in their position reasonably could have concluded he was unwilling to

_____

[6]"Deadly force" is force that "creates a substantial risk of causing death or serious bodily injury."  *Smith*, 394 F.3d at 706 (internal punctuation and citation omitted).  Pain-compliance techniques are capable of causing bodily injuries that, from a lay point of view, are serious; but the Ninth Circuit has yet to classify pain-compliance techniques as deadly force.  *See, e.g., Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 921 (9th Cir.2001) (observing that, in *Forrester v. City of San Diego*, 25 F.3d 804, 806-07 (9th Cir.1994), the court found "the use of pain compliance techniques on nonresisting abortion protestors, that resulted in complaints of bruises, a pinched nerve and a broken wrist, was objectively reasonable").  Mr. Myser has not cited, and independent research has failed to uncover, a published decision of the Ninth Circuit which holds that a knee strike into the torso constitutes deadly force.

ORDER GRANTING AND DENYING SUMMARY JUDGMENT - 19

listen to anything they had to say and knee strikes were necessary in order to compel him to release his arms.  As a result, the deputies did not violate the Fourth Amendment by administering them.

*3. Slamming head and beating*

Deputy Peterson states that, once Mr. Myser was face-down on the floor, he placed his knee on the back of Mr. Myser's neck in order to control him.  Mr. Myser alleges the deputies repeatedly slammed his head into the floor before handcuffing him.  The deputies deny his allegation.  The conflict between the two accounts is sufficient to create genuine issues of material fact with respect to whether the deputies gratuitously slammed Mr. Myers' head into to the floor. Summary judgment is inappropriate.  On January 26, 2003, a reasonable law enforcement officer would have known he would violate the Fourth Amendment by gratuitously slamming an arrestee's head into the floor. So, too, the alleged beating on the way to the jail.  Deputy Shover does not dispute that, if Mr. Myser's allegations are correct, he committed an egregious violation of the Fourth Amendment.  Instead, Deputy Shover adamantly denies he struck Mr. Myser.  A jury will have to decide which of the two accounts is correct.[7]

**SUPERVISORY LIABILITY**

Sergeant Bunch observed Mr. Myser take "an aggressive stance,"

---

[7]Mr. Myser urges the Court to rule prior to trial that the deputies' use of gratuitous force, if it occurred, constituted deadly force.  The Court declines to do so.  The jury will be instructed on the law and asked to determine whether the deputies violated Mr. Myser's constitutional rights.

ORDER GRANTING AND DENYING SUMMARY JUDGMENT - 20

but, after that, saw very little of what occurred despite the fact he was standing a few feet away. According to Mr. Myser, a reasonable jury could infer from Sergeant Bunch's inattention that he failed to exercise constitutionally adequate supervision over the deputies. Mr. Myser is incorrect. Supervisory liability requires evidence of personal involvement or integral participation in a constitutional violation. *Jones v. Williams*, 297 F.3d 930, 936 (9th Cir.2002) (citing *Chuman v. Wright*, 76 F.3d 292, 294-95 (9th Cir.1996)). In order to establish "integral participation," Mr. Myser must prove "fundamental involvement" in unconstitutional conduct. *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 n.12 (9th Cir.2007). The Court has ruled the deputies did not act in an objectively unreasonable manner by forcing Mr. Myser to the floor and administering knee strikes in order to handcuff him. Even if a jury issue existed in that regard, Mr. Myser has presented no evidence Sergeant Bunch instructed the deputies to force him to the floor and administer knee strikes. Nor has Mr. Myser presented any evidence Sergeant Bunch helped the deputies force him to the floor or helped them administer knee strikes. Which leaves Mr. Myser's allegation that the deputies gratuitously struck his head against the floor. There is no evidence Sergeant Bunch was aware this was happening and knowingly refused to restrain the deputies. Viewed in the light most favorable to Mr. Myser, the evidence is that Sergeant Bunch was nearby and should have paid closer attention to what the deputies were doing. Perhaps Sergeant Bunch was negligent, but negligence is not enough to

ORDER GRANTING AND DENYING SUMMARY JUDGMENT - 21

establish a constitutional violation.  *Cf. Billington v. Smith*, 292 F.3d 1177, 1190 (9th Cir.2002) ("An officer may fail to exercise 'reasonable care' as a matter of tort law yet still be a constitutionally 'reasonable' officer.")  Mr. Myser has failed to present evidence from which a rational jury could find Sergeant Bunch was involved in unconstitutional conduct to the degree necessary to establish supervisory liability.

**MUNICIPAL LIABILITY**

A rational jury arguably could find the deputies violated Mr. Myser's constitutional rights by gratuitously slamming his head into the floor of the bar and, later, by beating him during the trip from the bar to the jail.  Mr. Myser claims Spokane County is liable for those alleged acts under 42 U.S.C. § 1983.  There are two paths he may follow in his quest to establish County liability.  On the one hand, he can attempt to prove the County violated his right to be free from excessive force by adopting a policy, or adhering to a custom, that caused the alleged constitutional violation.  *See, e.g., Monell v. Department of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037-38, 56 L.Ed.2d 611 (1978).  On the other hand, he can attempt to prove the County was deliberately indifferent to an obvious risk he would be subjected to excessive force by its deputies; an indifference that fairly may be characterized as a policy on the County's part.  *See, e.g., City of Canton v. Harris*, 489 U.S. 378, 391, 109 S.Ct. 1197, 1206, 103 L.Ed.2d 412 (1989) (hereinafter "*Canton*").  At the risk of oversimplification, these two paths may be described as the paths of

ORDER GRANTING AND DENYING SUMMARY JUDGMENT - 22

"action" and "inaction."  *Long v. Los Angeles*, 442 F.3d 1178, 1185 (9th Cir.2006); *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1185, 1186 (9th Cir.2002).

A. Action by the County

Mr. Myser may not recover from Spokane County under the doctrine of *respondeat superior*.  *Monell*, 436 U.S. at 691, 98 S.Ct. at 2036. To the contrary, Spokane County is liable under § 1983 for those acts, and only those acts, which are its acts; that is to say, acts the County ordered or sanctioned.  *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986).  In order to recover from Spokane County by following this path, Mr. Myser must prove the following:  (1) he was deprived of his right to be free from excessive force; (2) the County had a policy authorizing its deputies to use excessive force; (3) the County's policy amounted to deliberate indifference to his rights; and (4) the County's policy was the moving force behind the constitutional violations.  *Mabe v. San Bernardino County, Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1110-11 (9th Cir.2001); *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir.1996).

There are several methods by which Mr. Myser may establish the existence of a policy.  For example, he may prove the deputies acted pursuant to "a formal governmental policy or a longstanding practice or custom which constitutes the [County's] standard operating procedure[.]"  *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir.1992) (internal punctuation and citations omitted), *cert. denied*, 510 U.S.

ORDER GRANTING AND DENYING SUMMARY JUDGMENT - 23

932, 114 S.Ct. 345, 126 L.Ed.2d 310 (1993).  Mr. Myser concedes

Spokane County does not formally authorize deputies to employ

gratuitous force.  To the contrary, the unconstitutional acts alleged

by Mr. Myser are prohibited by the Sheriff's use-of-force regulation.

The inquiry does not end there, however.  A policy may be inferred

from evidence of the widespread use of excessive force by Spokane

County Sheriff's deputies, or from evidence that repeated instances of

excessive force have gone unpunished by the deputies' supervisors.

*See id.* at 1349.  No such evidence exists.  For example, there is no

evidence Spokane County Sheriff's deputies routinely employ gratuitous

force, nor is there evidence that, if they do, their supervisors fail

to discipline them.  Rather, the acts of which Mr. Myser complains are

atypical.  Their exceptional character creates a serious obstacle.  He

"cannot prove the existence of a municipal policy or custom based

solely on the occurrence of a single incident of unconstitutional

action by a non-policymaking employee."  *Davis v. City of Ellensburg*,

869 F.2d 1230, 1233 (9th Cir.1989).[8]

In the alternative, Mr. Myser may "prove that an official with

final policy-making authority ratified a subordinate's

unconstitutional decision or action and the basis for it."  *Gillette*,

979 F.2d at 1346-47 (citations omitted).  The defendants do not deny

that the Sheriff of Spokane County is a final policymaker for purposes

---

[8]Mr. Myser does not allege the deputies were officials
"'with final policy-making authority.'"  *Gillette*, 979 F.2d at
1346 (quoting *Pembaur*, 475 U.S. at 483-84, 106 S.Ct. at 1300)).

ORDER GRANTING AND DENYING SUMMARY JUDGMENT - 24

of § 1983.  The person who was serving as Sheriff at all times relevant to this action ratified some of the deputies' acts; but the acts he ratified are not the acts of excessive force alleged by Mr. Myser.  As explained above, Mr. Myser alleges the deputies gratuitously slammed his head into the floor of the bar, and, then, beat him on the way to the jail.  There is no evidence the Sheriff ever ratified such acts.  Consequently, Mr. Myser cannot establish County liability by means of ratification.

Mr. Myser must prove four elements in order to recover from Spokane County under a "*Monell*" theory.  *See, e.g., Mabe*, 237 F.3d at 1110-11.  One of the four elements is the existence of a policy of the type described by *Monell* and its progeny.  A reasonable jury would be unable to find such a policy existed on January 26, 2003.  The absence of a policy prevents Mr. Myser from proving one of the essential elements of a "*Monell*" claim.  As a result, there is no need to consider the other elements.  Spokane County is not subject to § 1983 liability under a *Monell* theory.

B. Inaction by the County

Mr. Myser contends Spokane County may be held liable under § 1983 because it has failed to adopt a regulation requiring its deputies to issue a warning, when feasible, before employing deadly force.  As support for his contention, he cites *Chew v. Gates*, 27 F.3d 1432 (9th Cir.1994).  In *Chew*, the issue was whether the City of Los Angeles could be held liable under § 1983 based upon its failure to adequately supervise its officers' use of police dogs.  According to Mr. Chew,

ORDER GRANTING AND DENYING SUMMARY JUDGMENT - 25

not only had the City authorized its officers to use the dogs, but also the City knew the dogs were inflicting injuries in a significant number of cases. *Id.* at 1444. On those facts, the Ninth Circuit said, "[A] failure to adopt a departmental policy governing [the dogs'] use, or to implement rules or regulations regarding the constitutional limits of that use, evidences a 'deliberate indifference' to constitutional rights." *Id.*

The term "deliberate indifference" is "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 410, 117 S.Ct. 1382, 1391, 137 L.Ed.2d 626 (1997). In order to satisfy this standard, Mr. Myser must prove the County's alleged omission -- *i.e.*, failing to require deputies to issue warnings before using deadly force -- reflected deliberate indifference to the risk he would be subjected to excessive force. *See id.* at 411, 117 S.Ct. at 1392. Before allowing Mr. Myser to present this allegation to a jury, the Court must test the link between the County's omission and the unconstitutional acts allegedly committed by the deputies. *See id.* at 411-12, 117 S.Ct. at 1392. The Court may do so by asking whether the County should have realized the deputies' alleged acts would be a "plainly obvious consequence" of its failure to require them to issue warnings before using deadly force. *See id.* at 412-13, 117 S.Ct. at 1392. On the record as it now stands, the answer is, "No." To begin with, Mr. Myser has failed to present evidence of the widespread use of

ORDER GRANTING AND DENYING SUMMARY JUDGMENT - 26

excessive force; evidence that would have put the Sheriff on notice his existing use-of-force regulation was inadequate. *Cf. id.* at 407, 117 S.Ct. at 1390 ("If a program does not prevent constitutional violations, municipal decisionmakers may eventually be put on notice that a new program is called for."). Furthermore, the relationship between the County's failure to adopt the regulation advocated by Mr. Myser and his alleged injury is attenuated. If the deputies committed the gratuitous acts alleged by Mr. Myser, then they wilfully violated the Sheriff's regulation regarding the use of force. There is no reason to think they would have been deterred from committing those acts if only the regulation had contained a clause requiring them to issue a warning before using deadly force. In sum, the County's failure to require the warning advocated by Mr. Myser did not reflect a conscious disregard for a high risk that the deputies would employ excessive force against him. *See id.* at 415-16, 117 S.Ct. at 1394. Thus, he cannot recover from the County under § 1983 on the theory that the County's inaction constituted deliberate indifference to his Fourth Amendment right to be free from excessive force.

**LOU REITER**

Lou Reiter is a retired Los Angeles police official whom Mr. Myser intends to call as an expert witness. The defendants move to exclude Mr. Reiter's expected testimony on the ground he has failed to provide a written report that complies with Federal Rule of Civil Procedure 26(a)(2)(B). That Mr. Reiter is required to submit a detailed report is well established. "Rule 37(c)(1) gives teeth to

ORDER GRANTING AND DENYING SUMMARY JUDGMENT - 27

[this requirement] by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Torres v. City of Los Angeles*, 540 F.3d 1031, 1046 (9th Cir.2008) (quoting *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir.2001)).  The harshness of Rule 37(c)(1) is tempered by two exceptions.  *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir.2001).  A district court need not exclude an expert's testimony based upon the proponent's failure to comply with Rule 26(a)(2)(B) if the failure was either "substantially justified" or "harmless."  *Torres*, 540 F.3d at 1047.  Mr. Myser argues, in effect, that any defects in the written reports supplied by Mr. Reiter are harmless.  The Court agrees.[9]

**CONCLUSION**

The Court has personal jurisdiction over Deputy Shover.  The "Doe" defendants must be dismissed.  Mr. Myser's First Amended Complaint is not barred by the statute of limitations.  Mr. Myser is estopped from denying those explicit statements in the deputies' reports that are clearly inconsistent with the allegations he is now making.  Deputies Shover, Peterson, and Gregory are entitled to qualified immunity with respect to Mr. Myser's allegation that they violated his constitutional rights by forcing him to the floor of the bar and then, when he would not present his wrists for handcuffing,

---

[9]The defendants also argue numerous parts of Mr. Reiter's expected testimony are inadmissible under various Federal Rules of Evidence.  The Court will defer ruling on the admissibility of Mr. Reiter's opinions until trial.

ORDER GRANTING AND DENYING SUMMARY JUDGMENT - 28

administering knee strikes into his torso.  They are not entitled to qualified immunity with respect to his allegation they gratuitously slammed his head into the floor and, later, beat him during the trip to the jail.  Which leaves Sergeant Bunch and Spokane County.  Mr. Myser cannot prove Sergeant Bunch is liable based upon is alleged participation in constitutional violations.  Nor can Mr. Myser prove Spokane County had a policy authorizing the deputies to violate his constitutional rights, or a policy reflecting deliberate indifference to an obvious risk he would be subjected to excessive force.  Finally, the Court declines to exclude the opinions of Lou Reiter at this juncture.  The Court will rule upon their admissibility at trial.

   **IT IS HEREBY ORDERED:**

   1. The defendants' motion for summary judgment (**Ct. Rec. 85**) is granted in part and denied in part.

   2. The plaintiff's motion for partial summary judgment (**Ct. Rec. 105**) is denied.

   3. The plaintiff's motion to dismiss affirmative defenses involving comparative fault (**Ct. Rec. 113**) is granted.

   4. The defendants' motion to exclude the testimony of Lou Reiter (**Ct. Rec. 82**) is denied with leave to renew.

   5. The Court reserves ruling upon the defendants' motion to exclude testimony concerning hedonic damages (**Ct. Rec. 79**).

   6. The Court will hold a telephonic scheduling conference on **November 19, 2008**, at **10:30 a.m.**  Counsel must dial **509-458-6382** in order to participate in the conference call.  The parties shall submit

ORDER GRANTING AND DENYING SUMMARY JUDGMENT - 29

a proposed trial date by **November 12, 2008.**

    **IT IS SO ORDERED.**   The District Court Executive is hereby directed to enter this order and furnish copies to counsel.

    **DATED** this   3rd   day of November, 2008.

                          s/ Fred Van Sickle
                          Fred Van Sickle
              Senior United States District Judge

ORDER GRANTING AND DENYING SUMMARY JUDGMENT – 30